# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-1997

_____

| | | |
|---|---|---|
| Peggy S. Dunahoo, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern District |
| | * | of Arkansas. |
| Kenneth S. Apfel, Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant-Appellee, | * | |

_____

Submitted:  January 12, 2001
Filed:  February 26, 2001

_____

Before WOLLMAN, Chief Judge, and HANSEN and MURPHY, Circuit Judges.

_____

MURPHY,  Circuit Judge.


Peggy S. Dunahoo filed for social security disability benefits claiming she was unable to work due to carpal tunnel syndrome, rheumatoid arthritis, bronchial asthma, and depression.  The Administrative Law Judge (ALJ) denied her claim, and the Appeals Council considered additional evidence and then denied review of the ALJ's

decision. Both sides moved for summary judgment in the district court,[1] and the motion of the Social Security Commissioner was granted. Dunahoo appeals, and we affirm.

Dunahoo was born in 1955 and has a general educational development degree. She has past work experience as a mail clerk and a home health aide. She filed for benefits in March 1996, alleging she was unable to work because of bilateral carpal tunnel syndrome and arthritis. The Social Security Administration denied her application initially, and she requested an administrative hearing before an ALJ. At the administrative hearing, Dunahoo described her normal day as getting up, eating cereal, reading, cleaning the house, making the bed and washing dishes with the help of her husband, and occasionally visiting with friends. She testified that she also worked as a cashier at a local store for a total of 12-16 hours per week. She complained of pain and swelling in her hands and joints and that she often felt depressed. Her husband vouched for her credibility. She also presented the opinions of Doctors Brown, Stroope, Abraham, and Roberts.

Dr. Mark Brown, one of Dunahoo's treating physicians, diagnosed carpal tunnel syndrome after she complained of pain in her left hand. Lab tests showed a positive rheumatoid factor and elevated erythrocyte sedimentation rate, and Dr. Brown referred her to Dr. Henry Stroope, an orthopedist. In June 1996 she underwent left carpal tunnel release surgery. Dr. Stroppe noted that after surgery she was doing extremely well with pain and numbness in her left hand and had an active range of motion, but that she still complained of stiffness in the right hand and he diagnosed a mild carpal tunnel syndrome. In September 1996 Dunahoo returned to Dr. Brown with numerous complaints, including pain and swelling in her shoulders, elbows,

---

[1]The Honorable Henry L. Jones, United States Magistrate Judge for the Eastern District of Arkansas, presiding.

back, and legs.  A subsequent examination revealed no swollen or acutely hot joints, and she had full range of motion.  Dr. Brown diagnosed rheumatoid arthritis and prescribed Relafen.  At a follow up visit with Dr. Stroppe, Dunahoo continued her complaints of swelling and pain.  Dr. Stroope referred her to a rheumatologist, Dr. James Abraham.

One month before her appointment with Dr. Abraham, Dunahoo visited a mental health facility for depression.  She complained of poor appetite, sleep disturbance, and problems with memory and concentration.  The intake summary indicated her depression was triggered by the denial of her application for food stamps and workers compensation.  The summary also indicated that she had a supportive family, a sense of humor, and a positive outlook.  She was scheduled for therapy, but no evidence was presented that she attended.  Dunahoo visited Dr. Abraham in November 1996.  His examination revealed numerous tender points but no swelling and normal range of motion.  He reviewed Dr. Brown's prior lab work and noted that the rheumatoid factor, erythrocyte, and the negative antinuclear antibody result were mildly elevated, with mild leukocytosis.  His initial diagnosis was either fibromyalgia or arthritis, but he scheduled more tests.  In December 1996 Dr. Abraham diagnosed fibromyalgia, and he prescribed Ultram and a low impact exercise program.  He also noted that Dunahoo was taking Desyrel for depression.  Dunahoo returned to see Dr. Brown in December 1996 and continued to complain about pain in her shoulders and fingers, but examination revealed no swelling.  Dr. Brown also diagnosed fibromyalgia.  Dunahoo indicated to him that she was going to seek benefits.

Dunahoo filed for social security benefits, and Dr. Stephen Whaley was asked to complete a residual functional capacity assessment in January 1997. He concluded that Dunahoo could perform medium duty work.  Dr. Brown referred Dunahoo to Dr. Randy Roberts for a consultive evaluation in April 1997.  Dr. Robert's examination

revealed trigger points and tenderness, but indicated that Dunahoo had full range of motion, normal hand strength, and no swelling. He diagnosed fibromyalgia and administered trigger point injections. Three days after seeing Dr. Roberts, Dunahoo returned to see Dr. Brown. Dunahoo continued to complain about pain, and she requested a letter from Dr. Brown stating that she was disabled. Dr. Brown supposedly gave her a letter stating that she was unable to work at the time, but he refused to write a letter saying she was unable to work for at least one year. In May 1997, Dunahoo returned to see Dr. Roberts. Examination showed she still had trigger points, but full range of motion and no swelling. The dosage of her pain medication was increased, and she was told to increase her activity. In July Dunahoo returned to Dr. Brown claiming widespread pain, but the examination revealed full range of motion and no swelling. She was given injections of Dex-4 and Dex-8 and started Oruvail and Darvocet for pain and Pamelor for depression.

Based on this medical evidence and the testimony of Dunahoo and her husband, the ALJ denied Dunahoo's application for benefits, finding that she was not disabled. The ALJ found that Dunahoo had alleged arthritic pain, carpal tunnel syndrome, asthma, diabetes and depression, but had not established an impairment that satisfied one of the medical listings in the regulations. The ALJ evaluated Dunahoo's complaints of pain under Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), and determined that she was not credible. The ALJ also concluded that she had the residual functional capacity for full range medium work and could return to her past relevant work. Finally, the ALJ found that Dunahoo's depression was situational and that she failed to receive follow up treatment.

Dunahoo asked the Appeals Council to review the ALJ's decision, and she submitted the opinion of Dr. Jacob Aelion which had not been given to the ALJ. She had seen Dr. Aelion three times, complaining of pain in her joints. Based on her complaints of swelling and morning stiffness, and lab tests showing erythema,

elevated sedimentation rate, and positive rheumatoid factor, Dr. Aelion diagnosed rheumatoid arthritis. He stated that Dunahoo could occasionally lift and carry less than ten pounds, could walk, stand, and sit less than one hour, could balance stoop or bend occasionally, was limited in reaching, feeling, and handling, and could not climb, kneel, or crouch. The Appeals Council received and considered this additional evidence but nevertheless denied her request for review. Dunahoo then brought suit in federal court where both sides moved for summary judgment. The district court granted the Commissioner's motion, and this appeal followed.

Dunahoo argues on appeal that the ALJ's decision is not supported by substantial evidence in the record as a whole. She asserts that the ALJ erred by not explaining why she did not meet the listing for rheumatoid arthritis, and that she did meet that listing. Moreover, she contends that the ALJ improperly discredited her subjective complaints. She also argues that the ALJ erred by concluding that she has the residual functional capacity to perform medium work. Finally, Dunahoo argues that she established she has severe depression. The Commissioner responds that Dunahoo did not meet the listing for arthritis as shown by the conflicting opinions of five doctors, that her complaints were properly evaluated, that she can perform medium duty work, and she does not meet the listing for depression.

A federal court on review must determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." Id. The court may not reverse merely because evidence would have supported a contrary outcome. See id.

Dunahoo first argues that the Commissioner's determination that she does not meet the listing for rheumatoid arthritis is not supported by substantial evidence.

Dunahoo contends that the Commissioner did not state why she did not meet the listing. The Commissioner responds that failure to explain fully why she did not meet the listing is not error. In determining whether Dunahoo has met the listing for rheumatoid arthritis, the Commissioner must engage in a five step evaluation. See 20 C.F.R. § 404.1520 (a)-(f). Dunahoo is correct that it is preferable to have the Commissioner explicitly state the reasons why a claimant failed to meet a listing, but the conclusion may be upheld if the record supports it. See Briggs v. Callahan, 139 F.3d 606, 609 (8th Cir. 1998). Dunahoo argues that the medical evidence she presented, now including the opinion of Dr. Aelion, established that she meets the listing for arthritis. The Commissioner responds that the difference of medical opinion is substantial evidence that the listing was not met.

Section § 1.02 which is the listing for rheumatoid arthritis required Dunahoo to establish both a "[h]istory of joint pain, swelling, and tenderness involving multiple major joints [] and with signs of joint inflammation [] on current physical examination despite prescribed therapy for at least three months, resulting in significant restriction of function," and corroboration of the diagnosis with medical tests. See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.02. Dr. Brown[2] first diagnosed arthritis with no swelling or inflammation and full range of motion, but later diagnosed fibromyalgia. Dr. Stroope observed diffuse swelling and inflamation in

_____

[2]Dunahoo and the Commissioner disagree about which doctor was her treating physician and whose opinion is entitled to greater weight. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). Dunahoo argues that Dr. Aelion was her treating physician because he saw her at least three times, ordered tests, and prescribed medication. In her initial brief, however, she stated that Dr. Brown was her "main treating doctor." The Commissioner argues that Dr. Aelion has only seen Dunahoo in a consultive capacity and has not obtained a longitudinal picture of her condition. Even assuming that Dr. Aelion was the treating physician, his opinion is not entitled to substantial weight if it is inconsistent with other substantial evidence in the record. See id.

Dunahoo's right hand, but Dr. Abraham, a rheumatologist, diagnosed fibromyalgia and no evidence of inflamation. Dr. Robert's examination revealed full range of motion, normal hand strength, and no swelling, but trigger points due to fibromyalgia. In October 1997 Dr. Aelion diagnosed probable arthritis and confirmed that diagnosis in December 1997, but it is unclear whether he based the diagnosis on subjective complaints or clinical examination. Since Dr. Aelion's findings of arthritis with inflamation and swelling are contradicted by the conflicting conclusions of four other doctors on symptoms and diagnosis, there is substantial evidence in the record as a whole that Dunahoo did not satisfy the listing for rheumatoid arthritis.

Dunahoo also asserts that the ALJ improperly discredited her subjective complaints because he did not state reasons for discounting her credibility and the medical evidence supports her complaints. The Commissioner responds that the ALJ did state reasons for discrediting Dunahoo and that her normal daily activities are inconsistent with her subjective complaints. In analyzing a claimant's subjective complaints of pain, an ALJ must examine: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions." Polaski, 739 F.2d at 1322. The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Dunahoo's argument that the ALJ did not state reasons for discrediting her credibility is without merit.

The ALJ recited the five Polaski factors and detailed the relevant evidence. The ALJ noted that there were no functional restrictions by doctors, that Dunahoo failed to receive follow up treatment for either her depression or carpal tunnel

syndrome, and that Dunahoo's husband was biased and not persuasive. The ALJ concluded that her complaints were not borne out by the record. Dunahoo also argues that the medical evidence supports her subjective complaints. As previously noted, only Dr. Aelion put restrictions on her activity although she has persistently complained about pain. Moreover, her daily activities are inconsistent with the disabling level of pain she has alleged. She described her daily activities as getting up, eating, reading, cleaning the house, making the bed and doing dishes with the help of her husband, making meals, visiting with friends, and occasionally shopping and running errands. Such evidence may be considered in judging the credibility of her complaints. See Nguyen v. Chater, 75 F.3d 429, 430-1 (8th Cir. 1995); Shannon v. Chater, 54 F.3d 484, 487 (8th Cir. 1995). She also stated that she works part of the week as a cashier, and she had told a counselor that she attempted to return to her job as a mail clerk, and found it no longer available. Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain. See Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996); Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995). Dunahoo activities are inconsistent with her complaints, and the ALJ's determination was supported by substantial evidence on the record.


Dunahoo contends that the ALJ's determination that she has the residual functional capacity to perform medium work is not supported by the record because her treating physician gave her a letter stating she was unable to work, test results supported her claims, and Dr. Aelion placed restrictions on her ability to work. The Commissioner responds that the Whaley assessment, the lack of restrictions by the first four doctors, the refusal of Dr. Brown to write a letter stating she would be unable to work for one year, and the lack of evidence that Dr. Aelion knew about Dunahoo's current job are substantial evidence supporting the ALJ's determination. Residual functional capacity is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations. See Anderson v.

<u>Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995); 20 C.F.R. § 416.945(a). A determination that Dunahoo can perform medium work means she can lift no more than fifty pounds at a time with frequent lifting or carrying of objects weighing twenty-five pounds. <u>See</u> 20 C.F.R. § 404.1567(c).

The ALJ's determination of residual function is supported by substantial evidence. Dr. Whaley determined that Dunahoo could perform medium duty work and neither Dr. Abraham, Dr. Roberts, or Dr. Stroope placed any restrictions on her ability to work. Dunahoo claims that Dr. Brown gave her a letter stating that she was "unable to work at this point." Although this letter is not part of the record, Dr. Brown stated in his medical records that he refused to give Dunahoo a letter stating that she was unable to work for at least one year. Dr. Aelion is the only doctor who placed restrictions on Dunahoo's ability. These restrictions were based largely on Dunahoo's complaints, which the ALJ discounted as not being credible because they were inconsistent with her daily activities. The record does not indicate that Dr. Aelion knew about Dunahoo's job operating a cash register, which was inconsistent with the restriction that she could not perform frequent reaching, handling and fingering. The inconsistencies in Dunahoo's daily activities and the medical opinions of the other doctors provide substantial evidence supporting the ALJ's determination.

Lastly, Dunahoo contends that the ALJ erred by not finding that her depression was a severe impairment because she was admitted to a mental health center and her doctor continued her prescription for depression. The Commissioner responds that the ALJ did find severe impairment, but no significant functional limitations, because Dunahoo did not allege depression for the basis of her disability, failed to follow prescribed treatment, and the depression was situational. Dunahoo misstates the ALJ's findings, which found that she had severe depression with no resulting significant functional limitations. The fact that she did not allege depression in her application for disability benefits is significant, even if the evidence of depression

was later developed. See Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993). Although Dr. Brown stated that on one visit Dunahoo seemed depressed, the intake notes from the mental health center stated she had a positive outlook on life under normal circumstances. After being admitted to the mental health center, Dunahoo was scheduled for weekly health sessions but never followed through, which can be a basis for denial of benefits. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). Her failure to attend counseling, her daily activities (including part-time work), and the intake notes support the ALJ's determination that the depression was due to her denial of food stamps and workers compensation and was situational. There is substantial evidence on the record that Dunahoo's depression did not result in significant functional limitations.

In conclusion, we find that there was substantial evidence in the record as a whole to support the denial of benefits, and we accordingly affirm the judgment of the district court.

A true copy.


        Attest:


            CLERK, U.S. COURT OF APPEALS,  EIGHTH CIRCUIT.

-10-