# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2142

_____

| | | |
|---|---|---|
| Sharon Travis, | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Michael J. Astrue, Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant – Appellee. | * | |

_____

Submitted: November 16, 2006
Filed: February 28, 2007

_____

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Sharon Y. Travis appeals the dismissal of her disability-insurance and supplemental-security-income claims. The district court[1] dismissed for lack of subject matter jurisdiction or, alternatively, on the merits. Having authority under 28 U.S.C. § 1291, this court affirms on the merits.

_____

[1] The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

In 1995, Travis applied for disability-insurance benefits and supplemental-security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382(c). She alleged inability to work beginning November 14, 1994, due to high blood pressure, diabetes, arthritis, kidney problems, back problems, memory lapses, a nervous condition, and the need for oral surgery. Her application was denied initially and upon reconsideration. After a hearing, the ALJ denied her application, finding she could return to past work.

Travis requested review by the appeals council, submitting additional evidence. The council remanded for review. After a second hearing, the ALJ again found that Travis could return to past work. The council denied her request for review.

Travis then sought judicial review by the district court. In April 2000, on the Commissioner's motion, the district court remanded back to the council for consideration of additional evidence on mental impairments. The council then remanded the case to the ALJ.

Travis filed a second application for benefits in February 1998, alleging disability as of July 9, 1997, based on high blood pressure, diabetes, arthritis, irritable bowel syndrome, Alzheimer's disease, depression, hypothyroidism, obesity, and problems with her memory and kidneys. Her claims were granted upon initial review, but with an onset date of May 20, 1999.

Travis then filed a third application in January 2000, re-alleging an onset date of July 9, 1997. A hearing was held before the ALJ in October 2000, on her first and third applications, pursuant to the district court's April 2000 remand. The ALJ determined that Travis was not disabled from November 14, 1994 (the date claimed in her first application) to May 20, 1999 (the onset date granted in her second

application). The ALJ concluded that she could return to her past work as a cashier. Travis appealed to the district court.

The district court dismissed the complaint, without prejudice, for lack of subject matter jurisdiction or, alternatively, on the merits. Travis appeals, claiming the district court had jurisdiction to review the Commissioner's denial of her claims, and that the Commissioner's decision is not supported by substantial evidence.

## II.

The district court ruled that it lacked subject matter jurisdiction because Travis failed to exhaust her administrative remedies by not seeking review by the council on her first and third applications. Both Travis and the government agree that the district court maintained subject matter jurisdiction.

The "exclusive methods" for district courts to remand to the Commissioner are in sentences four and six of 42 U.S.C. § 405(g). ***Pottsmith v. Barnhart***, 306 F.3d 526, 527 (8th Cir. 2002), *quoting **Shalala v. Schaefer***, 509 U.S. 292, 296 (1993). Sentences four and six provide:

> [4] The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.
> . . . . [6] The [district] court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case

is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

**42 U.S.C. § 405(g)**.

Remand under sentence four terminates the court's jurisdiction, while remand under sentence six does not. *See Schaefer*, 509 U.S. at 301. Under sentence six, "the district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

The motion to remand here requested a "sentence four remand" to "further evaluate Plaintiff's possible mental impairment, to include a mental status consultative examination with psychological testing to assist in delineating the nature and severity of said impairment." In its order, the district court found that "if remand is to be granted, it should come under sentence six" because "the Court is not making any ruling based on the correctness of the Commissioner's decision." The district court ordered a "sentence six remand."

As the district court did not affirm, modify, or reverse the Commissioner's decision and instead granted a "sentence six remand," the court retained subject matter jurisdiction, and thus improperly dismissed her case on those grounds .

This court reviews de novo a district court's decision to uphold the ALJ's denial of benefits. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006); *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006). This court decides "whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001). Substantial evidence is "less than a preponderance," but "enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id.*, *quoting Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); *Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). In determining whether there is substantial evidence on the record to support the Commissioner's decision, this court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), *quoting Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome. *See Reutter*, 372 F.3d at 950.

A.

Travis contends that the ALJ's determination that she was "not disabled" from 1994 to 1999 is not supported by substantial evidence on the record as a whole. She argues that (1) the ALJ improperly discounted the opinions of her doctors, (2) the ALJ improperly discounted her subjective complaints, and (3) the vocational expert's response did not support the ALJ's conclusion.

A disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. To determine disability, the ALJ followed the five-step process, considering whether: (1) Travis was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether Travis could perform any other kind of work. *See* **20 C.F.R. § 404.1520(a)(4)**; **20 C.F.R. § 416.920(a)**; *Hacker,* 459 F.3d at 936, *quoting Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003).

If the ALJ "cannot make a determination or decision at the first three steps of the sequential evaluation process, [it] will compare [the] residual functional capacity assessment . . . with the physical and mental demands of past relevant work." **20 C.F.R. § 404.1520(f)**; **20 C.F.R. § 416.920(f)**. If the claimant can still perform that work, the claimant is not disabled. *Id*.

The ALJ found that Travis was not disabled at the fourth step – holding that she had the residual functional capacity (RFC) to perform her past work as a cashier. "Residual functional capacity is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations." *Dunahoo*, 241 F.3d at 1039. The ALJ concluded that Travis had RFC to perform the demands of light work. Travis argues that the Commissioner mischaracterized her RFC, erroneously finding she could return to past relevant work, by discounting the opinions of her doctors and her subjective complaints, and by relying on vocational expert testimony that was inconsistent.

B.

Travis's medical record includes reports from several physicians, including Drs. Fowler, Hollis, Lyon, and Chan. In August 1996, Dr. Fowler diagnosed Travis with

pre-senile dementia, Alzheimer's type, with depressed mood. In December 1996, he indicated that she was disabled from her condition. In a letter of December 1998, he stated, "Because of her illness, she is disabled to work at any job."

Dr. Hollis was treating Travis as early as February 1996. In a March 1998 letter, he opined that Travis "would not be able to hold down a job in a productive manner including driving a truck." In January 1999, he restated her multiple chronic medical problems and reiterated his opinion that Travis could not work. Travis contends that the ALJ did not give the opinions of Drs. Fowler and Hollis the appropriate weight.

The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record. **20 C.F.R. § 404.1527(d)(2)**. "A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it." **Hacker**, 459 F.3d at 937. *See* **20 C.F.R. § 404.1527(d)(2)**. An ALJ may elect under certain circumstances not to give controlling weight to treating doctors opinions. A physician's statement that is "not supported by diagnoses based on objective evidence" will not support a finding of disability. **Edwards v. Barnhart**, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is "inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight." **Id.**; *see also* **Hacker**, 459 F.3d at 937; **20 C.F.R. § 404.1527(d)(2)**. It is the ALJ's duty to resolve conflicts in the evidence. *See* **Hacker**, 459 F.3d at 936.

While recognizing the "considerable" weight given the opinion of treating physicians, the ALJ found that their opinions were inconsistent with the record as a whole. In a March 1998 letter, Dr. Hollis wrote that Travis could not hold down a job in a productive manner, but two months later wrote that she "feels great." The ALJ noted that in 1996 Dr. Fowler wrote that Travis stopped driving a truck when she and her husband went bankrupt and that Travis had "no impairment of intellectual

functioning."  Her treatment from Dr. Fowler included supportive and cognitive therapy, which requires she intellectually participate in the therapy.  The ALJ found that Dr. Lyon's conclusion that Travis had moderate to severe depression, beginning stages of a global dementia syndrome, and *possible* Alzheimer's disease "were inconsistent" with "all the other evidence on the record."  Dr. Chan determined Travis suffered from "possible dementia" and "very marked impairment" in memory, but his "dementia lab workup" was normal.

Travis argues that a one-time medical evaluation does not provide substantial evidence for the ALJ's decision.  *See* **Cox v. Barnhart**, 345 F.3d 606, 610 (8th Cir. 2003).  Here, however, the ALJ's determination to grant Travis's treating physicians' opinions less weight is supported by more than a one-time medical evaluation and is supported by medical evidence.  This court will not reverse merely because evidence also points to an alternate outcome.  *See* **Reutter**, 372 F.3d at 950.  As there is conflicting evidence on the record, the ALJ's determination that the physicians' opinions were not supported by objective medical evidence does not lie outside the available zone of choice.  *See* **Hacker**, 459 F.3d at 938.

## C.

Travis asserts that the ALJ improperly discounted her subjective complaints. A claimant's complaints of pain or symptoms "shall not alone be conclusive evidence of disability . . . there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques."  **42 U.S.C. § 423(d)(5)(A)**. An ALJ may not disregard subjective complaints merely because there is no evidence to support the complaints, but may disbelieve subjective reports because of "inherent inconsistencies or other circumstances." **Eichelberger v. Barnhart**, 390 F.3d 584, 589 (8th Cir. 2004).

Little medical evidence supports her allegations of pain. However, "the absence of an objective medical basis which supports the . . . subjective complaints is just one factor to be considered in evaluating the credibility of the . . . complaints." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must also consider (1) the claimant's daily activities, (2) the duration, frequency and intensity of pain, (3) precipitating and aggravating factors, (4) dosage, effectiveness and side effects of medication, (5) and functional restrictions. *Id.* The ALJ need only acknowledge and consider the factors, not explicitly discuss each one. *Eichelberger*, 390 F.3d at 590.

Here, applying the *Polaski* factors, the ALJ acknowledged Travis's complaints, but concluded she could perform light, nonstressful physical or mental tasks. The ALJ noted that Travis maintained her Class "C" commercial driver's license, and that her husband admitted she could manage professional driving close to home in 1997. She continued to do laundry, some housework, cooking and shopping, and sought and gained custody of her twin granddaughters. Travis counters that her driver's license was automatically renewed, she did not perform household activities, she only shopped for a short period of time, and she had to give up custody of her grandchildren in 1997. The ALJ determined that the record as a whole does not support Travis's allegations of pain that is constant, unremitting, or disabling. Where there are two inconsistent reports, with one supporting the ALJ's determination, this court must affirm the ALJ's denial of benefits. *See Eichelberger*, 390 F.3d at 589. This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence. *See id.*; *Hacker*, 459 F.3d at 936.

D.

Determining that Travis was not disabled at the fourth step, the ALJ relied on vocational expert testimony that Travis could perform her past work as a cashier.

Travis objects that the expert's response does not support the ALJ's finding that she could return to her past work as a cashier.

Responding to a question approximating Travis's case, the vocational expert testified that Travis could perform her past duties as a cashier. In a follow-up question to a second hypothetical, the ALJ asked, "Would the fact that she had a poor ability to follow work rules . . . affect [her ability to perform the job of a cashier]?" The expert stated "normally I would say yes except she has fair ability to follow simple instructions and it's an unskilled job." He then stated that the job would require a "level of attention and concentration . . . . I guess there could be an issue there if that in and of itself would be enough to keep a person from performing that job."

Travis contends that the response was equivocal, undermining the ALJ's finding. An ALJ's reliance on a vocational expert's testimony is improper if the expert substantially changes the hypothetical beyond the ALJ's instructions. *See Penn v. Sullivan*, 896 F.2d 313, 317 (8th Cir. 1990). Here, however, the vocational expert stated his opinion and then raised an issue for the ALJ's consideration. The expert did not change the hypothetical question or rely on criteria not mentioned by the ALJ. As the ALJ did not find that Travis suffered those attention and concentration limits, the expert's equivocal response does not contradict his prior response to the ALJ's hypothetical question. *Cf. Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005) (the ALJ did not err in omitting additional restrictions not supported by evidence).

According to the vocational expert, the physical and mental demands of a cashier are limited and do not entail duties beyond light exertion. There is substantial evidence to support the ALJ's decision that Travis had the RFC to return to past work.

## IV.

The judgment of the district court is affirmed.

_____