# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2757

_____

Stephany Draper

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of the Social Security Administration

*Defendant - Appellee*

------------------------------

National Academy of Elder Law Attorneys; Special Needs Alliance

Amici on Behalf of *Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 9, 2014
Filed: March 3, 2015

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Stephany Draper appeals from the district court's[1] decision affirming the termination of her Supplemental Security Income ("SSI") payments. The district court held that Draper was not eligible for SSI benefits because the funds in her trust raised her assets above the eligibility limit. We affirm.

I.

Eighteen-year-old Stephany Draper suffered a traumatic brain injury in a car accident in June 2006. Draper executed a durable power of attorney, authorizing her parents, John and Krystal Draper, to, among other things: (1) "demand, sue for, recover, collect, and receive" every sum of money belonging to or claimed by Draper; (2) "compromise or compound any claim or demand;" and (3) "fund, transfer assets to, and to instruct and advise the trustee of any trust wherein [Draper is] or may be the trustor, or beneficiary."

Draper began receiving SSI payments in July 2007. Approximately seven months later, on February 12, 2008, John Draper signed a personal-injury settlement statement on Draper's behalf, under which Draper received $429,259.41. Later that day, Draper's parents, without referencing the power of attorney, signed documents creating the Stephany Ann Draper Special Needs Trust. As explained in the trust document, Draper's parents intended for the trust to qualify under 42 U.S.C. § 1396p(d)(4)(A), meaning that it would provide for Draper's needs without "displac[ing] or supplant[ing] public assistance or other sources of support that may otherwise be available to the beneficiary." The trust listed as its funding source only "the proceeds of the settlement of a liability claim," referring to the money Draper received in the personal-injury settlement. The trust was funded with the

_____

[1]The Honorable Karen E. Schreier, then Chief Judge, United States District for the District of South Dakota.

-2-

$429,259.41 sum in a single deposit on the same day that her parents executed the trust agreement.

In September 2008, Draper received notice from the Social Security Administration ("SSA") that she had been overpaid a total of about $3,000 in SSI benefits from February through September 2008 because her assets, including the funds in the trust, exceeded the SSI-eligibility limit of $2,000. The SSA also informed Draper that her SSI payments would cease. Draper appealed the agency decision to an Administrative Law Judge ("ALJ").

The ALJ found that Draper had been overpaid SSI benefits because her special-needs trust was not exempt from being counted as a personal asset under § 1396p(d)(4)(A). To reach this conclusion, the ALJ relied on the SSA's interpretation of § 1396p(d)(4)(A) set forth in its Program Operations Manual System ("POMS"), a policy and procedure manual that agency employees use in evaluating eligibility for SSI benefits. According to the POMS, Draper's parents had to act as third-party creators when establishing the trust in order for it to be exempt under § 1396p(d)(4)(A). POMS SI 01120.203B(1)(g). The ALJ found that the trust did not qualify because Draper's parents acted as Draper's agents under the power of attorney when they established the trust. Accordingly, the ALJ held that Draper was ineligible for SSI benefits.

Draper requested review by the Social Security Appeals Council. While her appeal was pending and in an effort to remedy the trust's non-compliance, Draper's parents obtained a state court order modifying the trust *nunc pro tunc*, effective February 12, 2008, which retroactively listed the state court, rather than Draper's parents, as the trust's settlor. The Appeals Council denied Draper's request for review and determined that the state court's order modifying the trust did not provide a basis for altering the ALJ's decision. The district court affirmed the judgment of

-3-

the SSA, likewise holding that the trust failed to meet the requirements laid out in the POMS.  Draper now appeals.

## II.

We review *de novo* the district court's decision affirming the denial of SSI benefits.  *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).  We will reverse the findings of an agency only if they are not supported by substantial evidence or result from an error of law.  42 U.S.C. § 405(g); *Mason v. Barnhart*, 406 F.3d 962, 964 (8th Cir. 2005).  "Substantial evidence is 'less than a preponderance,' but 'enough that a reasonable mind would find it adequate to support the Commissioner's conclusions.'" *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (quoting *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001)).  "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome."  *Id.*  "Whether the ALJ based his decision on a legal error is a question we review de novo."  *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008).

Draper contends the SSA erred by concluding that her trust did not qualify under § 1396p(d)(4)(A) because her parents satisfied the qualifying-trust criteria or, alternatively, because the state court's retroactive action naming itself as settlor remedied any initial non-compliance.  Our review requires us to examine whether Draper's parents or the state court properly established a qualifying trust.  To complete this task, we begin our analysis with the text of the statute.  We then examine whether the SSA's interpretation of any ambiguities in the statute's text warrants deference.  Finally, we explore whether Draper's parents took the steps necessary to comply with the qualifying-trust requirements when creating the Stephany Ann Draper Special Needs Trust.

A.

Under Title XVI of the Social Security Act, "[e]very aged, blind, or disabled individual who is determined . . . to be eligible on the basis of his income and resources shall . . . be paid benefits by the Commissioner of Social Security." 42 U.S.C. § 1381a. When such an unmarried individual's personal resources exceed $2,000, he or she loses eligibility for SSI benefits. 42 U.S.C. § 1382(a)(3)(B). Certain assets are exempt from being counted against this $2,000 limit, however, including special-needs trusts under § 1396p(d)(4)(A). 42 U.S.C. § 1382b(e)(5). The question at issue in this case is whether the Stephany Ann Draper Special Needs Trust qualifies under this statute.

As in any review of agency interpretations of federal law, we begin our analysis with the text of the statute, 42 U.S.C. § 1396p(d)(4)(A), incorporated by 42 U.S.C. § 1382b(e)(5). *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984). We examine whether the statute's language speaks to the two issues raised by the parties in this case: (1) whether parents acting under power of attorney may create and fund a qualifying trust and (2) whether a court's *nunc pro tunc* order modifying a trust such that the court is listed as its original settlor operates to "establish" retroactively a qualifying trust. Section 1396p(d)(4)(A) defines a qualifying trust as:

> A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

-5-

We agree with the district court that Congress, in the text of § 1396p(d)(4)(A) and § 1382b(e)(5), did not speak directly to the questions at issue here. Specifically, the text does not answer whether parents exercising power of attorney for their child may create and fund a qualifying trust nor does it explain what process a court or a parent must follow to "establish" such a trust. Neither § 1396p(d)(4)(A) nor § 1382b(e)(5) provides a definition of "parent" or "establish," and we find no other indication that Congress contemplated these issues when incorporating § 1396p(d)(4)(A)'s language into § 1382b(e)(5).[2] *See Chevron*, 467 U.S. at 851 (discussing textual ambiguity). We therefore conclude that the text is ambiguous on these points and that Congress left a gap for the agency to fill in overseeing the daily administration of the special-needs trust exception. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981) (noting Congress has granted the agency administering the Social Security Act "exceptionally broad authority to prescribe standards"); *TeamBank, N.A. v. McClure*, 279 F.3d 614, 618-20 (8th Cir. 2002) (stating that an agency may fill statutory gaps through interpretation). Accordingly, we find that the agency had authority to interpret the statute, and we next examine whether the SSA permissibly construed § 1396p(d)(4)(A) in the POMS. *See United States v. Mead Corp.*, 533 U.S. 218, 229 (2001).

B.

The district court determined that the POMS provisions at issue warrant deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Skidmore* deference recognizes that an agency's interpretation of the statute it is charged with implementing "may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and

---

[2]If anything, § 1396p(d)(2)(A) provides a definition of "establish" contrary to Draper's position. However, we acknowledge that it is unclear whether § 1396p(d)(2)(A) applies to § 1396p(d)(4)(A) and whether Congress incorporated definitions from § 1396p(d)(2)(A) into § 1382b(e)(5).

given the value of uniformity in its administrative and judicial understandings of what a national law requires." *Mead*, 533 U.S. at 234 (quoting *Skidmore*, 323 U.S. at 139). Such deference operates along a spectrum. *Id.* at 228. The amount of deference afforded to an agency interpretation under *Skidmore* turns on several factors, including: (1) the thoroughness of the agency's consideration, (2) the validity of its reasoning, (3) consistency with earlier and later pronouncements, (4) formality, (5) expertise of the agency, and (6) all those other factors "which give it power to persuade, if lacking power to control." *Id.* at 228-29 (quoting *Skidmore*, 323 U.S. at 140).

We conclude that the district court properly held that the provisions in the POMS interpreting § 1396p(d)(4)(A) warrant *Skidmore* deference. According respect under *Skidmore* here is consistent with the Supreme Court's conclusions that "[t]he Social Security Act is among the most intricate ever drafted by Congress," *Schweiker*, 453 U.S. at 43, and that Congress routinely relies on agencies to fill gaps in the statutes they administer. *See* 42 U.S.C. § 405(a) (giving the Commissioner "full power and authority to make rules and regulations and to establish procedures" to administer the Social Security Act); *Chevron*, 467 U.S. at 843 (noting that Congress explicitly and implicitly delegates authority to agencies to fill statutory gaps); *see also Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385-86 (2003) (granting the POMS provisions examined in that case respect under *Skidmore*); *Gragert v. Lake*, 541 F. App'x 853, 856 n.1 (10th Cir. 2013) (stating that the POMS warrants respect under *Skidmore*); *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011) (stating that the POMS may be entitled to respect under *Skidmore* "to the extent it provides a persuasive interpretation of an ambiguous regulation"); *accord Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989) ("Although the POMS is a policy and procedure manual that employees of the [administering agency] use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive.").

We further agree with the district court's conclusion that the POMS provisions at issue here—namely, those in POMS SI 01120.203B—warrant relatively strong *Skidmore* deference. The relevant POMS provisions fall squarely within the SSA's area of expertise. *See Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 303 (3d Cir. 2012) (explaining that the SSA "has a great deal of expertise in administering" the Social Security program). In addition, the POMS provisions demonstrate valid reasoning; that is, the detailed process required for establishing qualifying special-needs trusts contained in the POMS is consistent with "Congress's command that all but a narrow class of an individual's assets count as a resource when determining the financial need of a potential SSI beneficiary." *Draper v. Colvin*, No. CIV. 12-4091-KES, 2013 WL 3477272, at *9 (D.S.D. July 10, 2013) (citing 42 U.S.C. § 1382b). Finally, the provisions interpreting § 1396p(d)(4)(A) are part of a relatively long-standing and consistent interpretation that ensures universal applicability of the statute. *Id.*; *see Sai Kwan Wong v. Doar*, 571 F.3d 247, 261 (2d Cir. 2009) (noting that "the deference due to an agency interpretation is at the high end of the spectrum of deference when the interpretation in question is not merely ad hoc but is applicable to all cases" (quoting *Estate of Landers v. Leavitt*, 545 F.3d 98, 110 (2d Cir. 2008)); *cf. Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (declining to grant deference to an interpretation that emerged during litigation rather than through earlier agency action). Draper has not pointed to any contrary interpretation of § 1396p(d)(4)(A) advanced by the SSA since the special-needs trust exception was incorporated into § 1382b. For these reasons, we conclude the district court correctly held that Draper had to comply with the requirements listed in the POMS to establish a qualifying trust.

C.

We next examine whether Draper's trust complied with the POMS provisions interpreting § 1396p(d)(4)(A). POMS SI 01120.203 provides a detailed process for creating a qualifying trust under this statute: "[T]o qualify for the special needs trust

exception, the assets of the disabled individual must be put into a trust established through the actions of the disabled individual's: parent(s); grandparent(s); legal guardian(s); or a court." POMS SI 01120.203B(1)(f). When a parent seeks to establish a trust for a legally competent adult, the POMS states that the parent "may establish a 'seed' trust using a nominal amount of his or her own money, or if State law allows, an empty or dry trust." *Id.* After a seed trust or an "empty" or "dry" trust is established, "the legally competent disabled adult may transfer his or her own assets to the trust or another individual with legal authority (e.g., power of attorney) may transfer the individual's assets into the trust." *Id.* Importantly, "[t]he special needs trust exception does not apply to a trust established through the actions of the disabled individual himself or herself." *Id.* Regarding the funding of the trust, the POMS provides the following:

> The person establishing the trust with the assets of the individual or transferring the assets of the individual to the trust must have legal authority to act with respect to the assets of that individual. Attempting to establish a trust with the assets of another individual without proper legal authority to act with respect to the assets of the individual will generally result in an invalid trust.
>
> . . .
>
> [A] trust established under a [power of attorney] will result in a trust we consider to be established through the actions of the disabled individual himself or herself because the [power of attorney] merely establishes an agency relationship.

POMS SI 01120.203B(1)(g).

Draper contends that her trust, at its inception, satisfied each of the POMS criteria. Specifically, she alleges that her parents, acting in their individual capacities, created a valid, qualifying, special-needs trust for her benefit. Only after the trust was

established, she argues, was it funded with proceeds from the personal-injury settlement. Draper contends that this sequence of events conformed with both South Dakota law, *see* S.D. Codified Laws § 55-1-4 (noting that, under South Dakota law, an express trust is created when the "trustor indicat[es] with reasonable certainty . . . [t]he subject, purpose, and beneficiary"), and with the requirements set forth in the POMS.

Draper presents two theories supporting her conclusion. First, she argues that evidence in the record shows that her parents, acting in their individual capacities, formed a trust without a *res*—a so-called "empty" or "dry" trust[3]—and that this "empty" trust only later was funded with her personal-injury settlement proceeds. Thus, she argues that her parents complied with POMS SI 01120.203B(1)(f) because POMS SI 01120.203B(1)(f) permits this sequence of events in states recognizing "empty" trusts. Assuming without deciding that South Dakota law permits "empty" trusts, we nevertheless find that Draper's argument fails. The evidence shows that Draper's trust was not designed as an "empty" trust. Instead, the trust had an initial *res*—the proceeds of the personal-injury settlement. The trust agreement executed on February 12, 2008 made this fact explicit, stating that "[t]his trust *is* funded with the proceeds of the settlement of a liability claim" (emphasis added), a $429,259.41 sum, which was transferred into the trust in a single deposit that same day. Thus, we see no evidence of an intent to create an "empty" trust to comply with the POMS, and we find no error in the district court's conclusion on this basis.

---

[3]We note that the terms "dry" and "empty" trust, as used in trust law, sometimes refer to something other than a trust formed without assets. *See, e.g.*, 1 H. Tiffany, Real Property § 247 (3d ed. 1939) (defining dry trusts); Norman Veasey, *Kutak Symposium: Professional Responsibility and the Corporate Lawyer*, 13 Geo. J. Legal Ethics 331, 344 (2000) (mentioning empty trusts). However, the parties here agree that the POMS intended to refer to a trust created without an existing *res*.

This finding brings us to Draper's second theory—even if the trust was not designed to be "empty," her parents still complied with the POMS because they acted only in their individual capacities when establishing her trust. We disagree. First, under traditional trust-law principles, establishing a non-empty trust requires more than the execution of trust documents; the funding of the trust with its initial *res* plays a key role. *See* Restatement (Third) of Trusts § 2 cmt. i (2003) (noting that "merely entering into . . . an agreement or instrument of trust does not initially create a trust because of the absence of trust property, [but] a trust may . . . be created later if and when a transfer of trust property to the trustee is made with reference to that agreement or instrument"). Second, when a trust is formed with an initial, existing *res*, like the trust at issue here, both the POMS and traditional trust law hold that someone with a legal interest in the entire *res* must be involved in the trust's creation; otherwise, the trust is invalid. POMS SI 01120.203B(1)(g) ("Attempting to establish a trust with the assets of another individual without proper legal authority . . . will generally result in an invalid trust."); Restatement (Third) of Trusts § 41 cmt. b (2003) ("[O]ne cannot create a trust of property of which another has sole and complete ownership.").

Draper's parents, in their individual capacities, had no interest in the entire sum constituting the trust's initial *res*, Draper's personal-injury settlement proceeds.[4] Instead, they held an interest in the full settlement sum only in their capacity as Draper's agents exercising the power of attorney. Because Draper wishes to avoid a finding that her parents created an invalid trust, we find substantial evidence in the record that Draper's parents necessarily were acting as her agents when they incorporated all of her settlement proceeds and thus when they established the Stephany Ann Draper Special Needs Trust. When Draper's parents exercised the

---

[4]In a motion filed in the district court, Draper's parents conceded that they did not contribute any of their own funds to the trust's initial *res* and that they did not create a seed trust for their daughter.

-11-

power of attorney in this way—by funding a trust wherein Draper was the beneficiary[5]—the POMS "consider[ed] [the trust] to be established through the actions of the disabled individual . . . herself." POMS SI 01120.203B(1)(g). Therefore, according to the POMS, the trust did not qualify under § 1396p(d)(4)(A). POMS SI 01120.203B(1)(f) (noting that "[t]he special needs trust exception does not apply to a trust established through the actions of the disabled individual himself or herself").

Admittedly, some evidence in the record supports Draper's claim that her parents intended to act in their individual capacities. Draper's parents identified themselves individually as settlors and trustees, and the trust document explicitly states that it was established "pursuant to 42 U.S.C § 1396p(d)(4)(A)," a provision which notes that a third party, such as a parent, must create the special needs trust for the benefit of the disabled person. Nevertheless, as discussed above, other facts provide substantial evidence to support the conclusion that Draper's parents acted using the power of attorney when establishing the trust. *See Travis*, 477 F.3d at 1040 ("If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.").

Importantly, the POMS provides the specific steps Draper's parents had to follow if they wished to create a qualifying trust under § 1396p(d)(4)(A). First, Draper's parents, acting as individuals, needed to establish an "empty" trust or a seed trust with their own assets as the trust's initial *res*. POMS SI 01120.203B(1)(f). Only after the "empty" trust was formed or the seed trust was funded could Draper or her parents, using power of attorney, transfer Draper's money into the already-established trust. *Id.* Substantial evidence in the record supports the SSA's finding that Draper's parents did not take these initial actions, nor did they dissolve and recreate the trust

---

[5]This action expressly was permitted by the power of attorney.

to comply with the POMS at any point during this lengthy litigation. Accordingly, we cannot find in her favor. In reaching this conclusion, we recognize that we draw a hard line. However, we are not persuaded that we must find in favor of Draper because her parents came "close enough" to meeting the requirements laid out in the POMS. Only by enforcing compliance with the letter of the POMS can the agency oversee the vast SSI program, effectively administer the Act, and consistently distribute benefits to disabled individuals.

## D.

Finally, we agree with the SSA's finding that the state court's *nunc pro tunc* order did not "establish" the trust under § 1396p(d)(4)(A). *See Browning v. Sullivan*, 958 F.2d 817, 823 n.4 (8th Cir. 1992) (describing our procedure for reviewing decisions based on evidence submitted to the Appeals Council but not the ALJ). POMS SI 01120.203B(1)(f) notes that court-created trusts comply with § 1396p(d)(4)(A) only if "the creation of the trust [is] required by court order." The facts here show that the South Dakota court did not order the special-needs trust's creation. Instead, the court merely assigned itself a retroactive role in the already-established Stephany Ann Draper Special Needs Trust. We find that this action functioned as an "approval," an action insufficient to comply with § 1396p(d)(4)(A). *See* POMS SI 011020.203B(1)(f) ("Approval of a trust by a court is not sufficient."). Thus, we affirm the SSA's determination that the state court's action did not bring the trust into compliance with the POMS.

## III.

We therefore conclude that the agency and the district court correctly held that the Stephany Ann Draper Special Needs Trust is a countable resource for SSI purposes and that Draper is not entitled to SSI benefits as long as the funds in her trust raise her resources above the $2,000 eligibility limit. We affirm.

_____