# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2084

_____

Melvin Russell Twyford, Jr.

*Plaintiff - Appellant*

v.

Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: April 17, 2019
Filed: July 3, 2019

_____

Before COLLOTON, GRUENDER, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Melvin Russell Twyford, Jr., appeals the district court's[1] judgment upholding the Commissioner of Social Security's ("Commissioner") final decision to deny his applications for disability insurance benefits and supplemental security income

_____

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

("SSI"). Twyford asserts that the Administrative Law Judge's ("ALJ") findings at three steps of the five-step sequential evaluation process prescribed in 20 C.F.R. § 404.1520(a)(4) were not supported by substantial evidence.[2] We affirm.

## I. Background

In late 2012, Twyford applied for disability insurance benefits and SSI, alleging he became disabled on September 10, 2011, due to degenerative disc disease, major depressive disorder, and chronic anxiety. Several months after applying, Twyford underwent a cervical laminoplasty.

On March 10, 2015, the ALJ denied Twyford's applications. The ALJ found that Twyford had the following severe impairments: degenerative disc disease, status post-laminectomy; depression; anxiety; and substance abuse disorder. At step three, the ALJ determined that these impairments did not meet or equal the severity of any of the listed impairments. Specifically, the ALJ determined that Twyford's physical "condition [did] not meet the requirements of Listing 1.04 (disorders of the spine) because [he] [did] not have evidence of nerve root compression, or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." Nor did "[t]he severity of [his] mental impairments, considered singly and in combination, . . . meet or medically equal the criteria of listings 12.04, 12.06, and 12.09." His mental impairments did not meet the "paragraph B" criteria because the impairments only caused mild restriction in activities of daily living; moderate

---

[2]"The steps are: (1) Is the claimant currently performing substantial gainful activity (SGA)? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix I? (4) Does the impairment prevent the claimant from performing past relevant work? (5) Does the impairment prevent the claimant from doing any other work?" Bryant v. Colvin, 861 F.3d 779, 782 n.3 (8th Cir. 2017).

difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation of extended duration.

The ALJ determined that Twyford's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that his statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." The ALJ then found that Twyford had the residual functional capacity ("RFC") to perform light work with the following exceptions:

> [He] could occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds. He could not perform overhead reaching bilaterally. He should also avoid vibration and workplace hazards such as unprotected moving mechanical parts and unprotected heights. He would [be] able to understand, carry out and remember simple, routine and repetitive tasks involving only simple work-related decisions with few, if any, work place changes. He should not interact with the public but could be around co-workers throughout the day with only brief, incidental interaction with and no tandem tasks. He would be limited to work that is isolated, defined as having a supervisor check on work no more than occasionally.

At step four, the ALJ concluded that Twyford's RFC prevented him from performing his past relevant work as a grounds worker.

At step five, the ALJ, relying on a vocational expert's ("VE") testimony, found that Twyford was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as a patching machine operator, linking machine operator, or garment sorter. Because Twyford could perform other work, he was not disabled as defined by the Social Security Act.

## II.    Discussion

We review *de novo* the district court's decision affirming the denial of benefits. Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1089 (8th Cir. 2018). We will affirm unless the Commissioner's findings "are unsupported by substantial evidence or result from an error of law." Id. "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." Id. (quoting Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007)). If we find that the record supports two inconsistent conclusions, we must affirm the Commissioner's choice between those two conclusions. Bagwell v. Comm'r, Soc. Sec. Admin., 916 F.3d 1117, 1119 (8th Cir. 2019) (citing Ash v. Colvin, 812 F.3d 686, 689–90 (8th Cir. 2016)).

### A.    Listed Impairments

Twyford argues that the step three finding that his physical impairments do not meet or equal the severity of a listing is not supported by substantial evidence. To meet the listing for spinal disorders, Listing 1.04A, Twyford must show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. § pt. 404, subpt. P, app. 1, § 1.04A. "An impairment that manifests only some of th[ese] criteria, no matter how severely, does not qualify." KKC v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016) (citation omitted). There is evidence in the record to support a finding that Twyford had full range of spinal motion. Substantial evidence supports the ALJ's finding that Twyford did not meet all the criteria.[3]

---

[3]Twyford also argues that the ALJ failed to develop the record by not obtaining additional medical records. After the hearing, the ALJ requested hospital records for 2014, which did not include the operative notes from Twyford's surgery. "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or

Twyford next contends that his mental impairments meet the paragraph B criteria of Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). At the time of the ALJ's decision, Twyford had to show that his condition resulted in "at least two of the paragraph B criteria: (1) marked restriction of daily living activities, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, and (4) repeated episodes of decompensation of extended duration." Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013) (cleaned up). The ALJ's finding that paragraph B was not satisfied is supported by evidence in the record. The record demonstrates that Twyford was able to perform some household and personal care tasks; drive, shop for groceries, and live alone; and participate in family functions. His mental health professionals repeatedly documented an ability to relate with them, be cooperative and pleasant, and demonstrate fair to good levels of concentration and attention. Substantial evidence supports the ALJ's step three determination.[4]

---

prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) (citation omitted). It is unclear how the additional records would have affected the ALJ's determination. The records obtained by the ALJ included doctor's notes from a follow-up appointment after the surgery. In addition, Twyford submitted additional records to the Appeals Council after obtaining legal representation, but not the records he now claims are unfairly missing. Reversal on this ground is not warranted.

[4]Twyford also challenges the ALJ's dismissal of his Global Assessment of Functioning ("GAF") scores, but agency regulations and circuit precedent give limited importance to these scores. See Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) ("[S]ubstantial evidence supports the ALJ's decision not to give weight to [the claimant's] GAF score because GAF scores have no direct correlation to the severity standard used by the Commissioner.").

## B.    Residual Functional Capacity

Twyford's next contention is that the ALJ's RFC determination and adverse credibility finding are not supported by substantial evidence.  We are unpersuaded. While an ALJ is not free to disregard subjective complaints merely because there is no other evidence in support of the complaints, he may choose to disbelieve those subjective reports because there are inherent inconsistencies or other circumstances that cause the ALJ to question the reliability of the subjective reports.  Travis, 477 F.3d at 1042 (citation omitted).  Here the ALJ's credibility findings related to Twyford's subjective complaints are supported by evidence in the record: his work history, his activities of daily living, and the objective medical evidence.  See Crawford v. Colvin, 809 F.3d 404, 410 (8th Cir. 2015) (citation omitted) ("[T]he symptoms [the claimant] attested to are inconsistent with the objective medical evidence found on the record, and hence, need not be given great weight when considered against objective medical evidence."); Wright, 789 F.3d at 854 (concluding that the ALJ's reliance upon work history and activities of daily living was proper).  Based on the objective evidence in the record, it was not improper for the ALJ to discount Twyford's subjective complaints about the intensity, persistence and limiting effects of his physical and mental impairments.

After reviewing the administrative record, we conclude that substantial evidence supports the RFC determination.  We do not require that every aspect of an RFC finding "be supported by a specific medical opinion," only that it "be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted).  With regard to Twyford's physical limitations, the ALJ relied upon the examination performed by Dr. Joel Jeffries, an orthopedic surgeon.  The ALJ ultimately recognized that while Twyford had some significant physical limitations, they are sufficiently accounted for by limiting Twyford to light work with no climbing, no overhead reaching, and no exposure to workplace hazards.  There is substantial evidence in the record to support

the ALJ's finding that Twyford's physical limitations did not preclude him from performing light work with certain restrictions.

Substantial evidence also supports the extent of the mental limitations included in the RFC finding. Twyford challenges the ALJ's decision to give "significant weight" to the opinion of a state agency psychological consultant, Dr. C. Kenneth Bowles. The ALJ did not err in considering Dr. Bowles' opinion along with the medical evidence as a whole, where Dr. Bowles' opinion was consistent with the evidence. See Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007). Treating providers repeatedly documented Twyford's ability to be cooperative and pleasant and to concentrate to some extent. His activities of daily living were limited primarily by his physical impairments. Dr. Bowles noted some limitations to Twyford's social interaction ability, which the RFC finding adequately captures. While some evidence in the record could lend support to a more restrictive RFC finding, we cannot say that the ALJ's decision "lies outside the available zone of choice." Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006).[5]

## C. Vocational Expert's Testimony

Lastly, Twyford challenges the ALJ's step five finding that he could perform other work that exists in significant numbers in the national economy. As an initial matter, with no error in the RFC determination Twyford cannot prevail on his

---

[5]Twyford also challenges the ALJ's decision to give little weight to the opinions of Dr. Steven Adams, Dr. Barbara Gray, and Adam Lynch. The ALJ did not err. Dr. Adams and Dr. Gray were one-time examiners. Dr. Gray's opinion that Twyford would be unable to maintain sustained, gainful employment involved a determination reserved to the Commissioner. See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work' . . . involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."). Lynch served as Twyford's representative, not as a mental health provider.

argument that the VE's testimony was based on an inadequate hypothetical question. The record belies Twyford's other argument that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT") in that "the jobs identified by the VE require working around mechanical parts; reaching in all directions; and are not performed in an isolated setting." The three jobs identified by the VE do not involve working around mechanical parts. The DOT definitions do not specifically address overhead reaching, but the VE testified based on her own experience that the jobs do not require it. The ALJ's hypothetical question to the VE included a description of an isolated work environment, and the DOT shows that none of the jobs involves a more interactive environment. Because "the ALJ described [Twyford's] limitations to the VE, the VE responded with possible jobs, and the VE's testimony did not conflict with the DOT," the ALJ was entitled to rely upon her testimony. Courtney v. Comm'r, Soc. Sec. Admin., 894 F.3d 1000, 1005 (8th Cir. 2018).

## III.   Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____