# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SOCIAL SECURITY<br>    ADMINISTRATION,<br>                Petitioner, | DOCKET NUMBER<br>CB-7521-16-0001-T-1 |
| v. | DATE: May 27, 2022 |
| LEONARD COOPERMAN,<br>                Respondent. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Leonard Cooperman, Feeding Hills, Massachusetts, pro se.

Sharese M. Reyes, Esquire, Atlanta, Georgia, for the petitioner.

Kathryn A. Miller, Esquire, and Meeka S. Drayton, Esquire, Seattle, Washington, for the petitioner.

Patrick W. Carlson, Chicago, Illinois, for the petitioner.

## BEFORE

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

**FINAL ORDER**

¶1        The respondent has filed a petition for review, and the Social Security Administration (SSA) has filed a cross petition for review of the initial decision, which sustained charges of neglect of duties and conduct unbecoming, concluded that the respondent did not make whistleblowing disclosures, found good cause under 5 U.S.C. § 7521 to suspend the respondent for 180 days, and denied SSA's request to suspend the respondent from the date of the complaint through the Board's final decision in this matter.  This case was assigned to an administrative law judge (ALJ) for adjudication.  5 C.F.R. § 1201.140(a)(1).  We DENY the respondent's petition for review and GRANT SSA's cross petition for review. We MODIFY the initial decision to additionally sustain specification 15 of the conduct unbecoming charge, but we agree with the ALJ that SSA proved the neglect of duties and conduct unbecoming charges as set forth herein.  We FURTHER MODIFY the initial decision to find that the respondent's November 15, 2012 correspondence to the Office of Inspector General (OIG) constituted activity protected by 5 U.S.C. § 2302(b)(9)(C) but that he did not prove the correspondence was a contributing factor in SSA's decision to file the complaint against him.  We FIND that SSA has shown good cause to remove the respondent.  We DENY SSA's request to suspend the respondent from the date the complaint was filed through the issuance date of this Order.

**BACKGROUND**

¶2        The following facts, as recited in the initial decision, are generally undisputed.  Initial Appeal File (IAF), Tab 149, Initial Decision (ID).  The respondent has held the position of an SSA ALJ since June 2005.  ID at 7; IAF, Tab 96 at 20.  On October 2, 2015, SSA filed a complaint that sought to remove the respondent based on charges of neglect of duties (8 specifications) and conduct unbecoming (16 specifications) and to suspend the respondent from the date of the complaint through the date of the Board's final decision in this matter.

ID at 1, 54-55; IAF, Tab 1. The respondent raised a claim of reprisal for whistleblowing disclosures. ID at 2; IAF, Tab 84 at 5, 14-18. A multiple-day hearing was held. ID at 3; Hearing Transcripts (HTs) 1-7. The ALJ issued a 150−page initial decision, which included 338 findings of fact. ID at 7-57. The ALJ sustained both charges, including 6 of 8 specifications of the neglect of duties charge and 12 of 16 specifications of the conduct unbecoming charge. ID at 58-115. The ALJ found that the respondent did not make any whistleblowing disclosures. ID at 120-29. The ALJ also determined that there was good cause to suspend the respondent for 180 days, but he denied SSA's request to suspend the respondent from the date of the complaint through the date of the Board's final decision in this matter. ID at 130-44.

¶3        The respondent has filed a petition for review, SSA has filed a response, and the respondent has filed a reply. Petition for Review (PFR) File, Tabs 1, 20−21. On petition for review, the respondent challenges the ALJ's decision to sustain specifications 1-6 of the neglect of duties charge and to sustain specifications 1, 3-12, and 14 of the conduct unbecoming charge. PFR File, Tab 1.

¶4        SSA has filed a cross petition for review, and the respondent has filed a response. PFR File, Tabs 5, 15. In its cross petition for review, SSA argues it proved specifications 7 and 8 of the neglect of duties charge; it proved specifications 2, 13, and 15 of the conduct unbecoming charge; and removal is the appropriate penalty. PFR File, Tab 5. SSA also reiterates its request to suspend the respondent from the date the complaint was filed through the Board's final decision in this matter. *Id.* at 29-32.

¶5        The respondent also has filed a motion for oral argument, and SSA has filed a response. PFR File, Tabs 2, 9. The regulation at 5 C.F.R. § 1201.117(a)(2) states that the Board "may" hear oral arguments in any case. We find that oral argument will not assist the Board significantly in deciding the petition for

review and cross petition for review, and we deny the respondent's request. *Special Counsel v. Environmental Protection Agency*, 70 M.S.P.R. 41, 49 (1996).

¶6 Additionally, the respondent has filed several motions for leave to file an additional pleading. PFR File, Tabs 11, 18, 22, 24, 26, 29, 31. The Board's regulations do not provide for pleadings other than a petition for review, a cross petition for review, a response to a petition for review, a response to a cross petition for review, and a reply to a response to a petition for review. 5 C.F.R. § 1201.114(a)(5). Once the record closes on review, the Board will not accept any additional evidence or argument unless it is new and material. 5 C.F.R. § 1201.114(k). The respondent has made no such showing in his submissions. We therefore deny his motions.

¶7 The Association of Administrative Law Judges also has filed two separate requests to file an amicus curiae brief. PFR File, Tabs 34, 37. We deny these requests because an amicus curiae brief will not contribute materially to the disposition of this matter. 5 C.F.R. § 1201.34(e). Additionally, the respondent has filed a motion to supplement the record. PFR File, Tab 43. He has not persuaded us that the proffered evidence, even if new, is material. 5 C.F.R. § 1201.114(k). We therefore deny this request.

## DISCUSSION OF ARGUMENTS ON REVIEW

Standard of Review

¶8 The Board has original jurisdiction to adjudicate actions against ALJs. *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 12 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011). An agency may take an action against an ALJ only for "good cause," as determined after a hearing by the Board. 5 U.S.C. § 7521(a). SSA must prove good cause by preponderant evidence. *Long*, 113 M.S.P.R. 190, ¶ 12. Congress has not defined the term "good cause" for purposes of section 7521. *Id.* The Board, however, has adopted a flexible approach in which good cause is defined according to the individual

circumstances of each case. *Department of Labor v. Avery*, 120 M.S.P.R. 150, ¶ 5 (2013), *aff'd sub nom.*, *Berlin v. Department of Labor*, 772 F.3d 890 (Fed. Cir. 2014).

SSA proved the neglect of duties charge.

¶9      In specifications 1 and 2 of the neglect of duties charge, SSA alleged that the respondent had a duty to comply with agency regulations and policy when issuing decisions for a closed period of disability[2] (CPOD) and he breached that duty in fiscal years 2013 and 2014. IAF, Tab 1 at 11. In the initial decision, the ALJ found that SSA proved these specifications because the respondent did not explain his findings of medical improvement or support his findings with medical evidence. ID at 60-78.

¶10     On review, the respondent asserts that, contrary to the initial decision, he was authorized to decide a CPOD based only on a claimant's statement regarding his/her symptoms. PFR File, Tab 1 at 8-17. He asserts that this contention was supported by the regulation that defines "medical improvement" as "'any decrease in the medical severity of [a] claimant's impairments[]'" and provides that "'[a] determination that there has been a [medical improvement] must be based on changes (improvement) in the symptoms, signs *and/or* laboratory findings associated with [the] impairment(s).'" *Id.* at 9; 20 C.F.R. § 404.1594(b)(1) (emphasis in original). He further asserts that the ALJ's decision contradicted the relevant regulation and case law from the appellate courts and ignored SSA's Program Operations Manual System. PFR File, Tab 1 at 9-17.

¶11     Although the regulation uses the disjunctive "and/or," the ALJ concluded— and the record reflects—that SSA's policy required more evidence than a

---

[2] A closed period of disability occurs when a claimant, who was found to be disabled and entitled to disability benefits, subsequently experiences medical improvement related to the ability to work such that the claimant can engage in substantial gainful activity, the claimant is deemed to be no longer disabled, and disability benefits cease. ID at 60; *see* 42 U.S.C. § 423(f)(1).

claimant's subjective statements to find medical improvement for a CPOD. ID at 13, 63; HT 1 at 219-22, 243 (testimony of the Hearing Office Chief ALJ (CALJ), who was also the respondent's first-line supervisor); HT 2 at 220-22, 227-28 (testimony of the Regional CALJ, who was also the respondent's second-line supervisor); HT 5 at 95-96 (testimony of the Associate CALJ), 287-88 (testimony of the CALJ); IAF, Tab 94 at 14-15 (explaining in HALLEX I-2-8-25[3] that any "decision will provide the rationale for the ALJ's findings of fact and conclusions of law by including . . . [a]n explanation of the finding(s) on each issue that leads to the ultimate conclusion, including citing and discussing supporting evidence" and a "discussion of the weight assigned to various pieces of evidence . . .").

¶12      Moreover, the record reflects that the respondent was advised by multiple agency officials of SSA's policy regarding the analysis required for CPOD decisions. For instance, in a September 7, 2010 email, the respondent's first-line supervisor advised him "to *fully* rationalize any cessation, no matter what the claimant agrees to do." IAF, Tab 102 at 74 (emphasis in original). In a June 2011 retraining with a senior ALJ, he was provided the following guidance: "[A]ny [residual functional capacity (RFC) assessment], regardless of the [claimant's] agreement as to medical improvement[,] *must* be married to corresponding medical evidence."[4] IAF, Tab 93 at 5-6 (emphasis in original). The senior ALJ explained that a decision "should include a discussion of medical improvement showing how the signs, symptoms *and* objective testing show [i]mprovement under the medical improvement standard at the time the period

---

[3] The ALJ found in the initial decision that HALLEX, the Hearing Appeals and Litigation Law Manual, was designed to amplify and provide more specificity regarding regulations and rulings, it constituted written agency policy, and it was binding on ALJs. ID at 10.

[4] An individual's RFC is "the most [s/he] can still do despite [his/her] limitations" and will be assessed "based on all the relevant evidence in [the individual's] case record." 20 C.F.R. § 416.945(a)(1).

closes." *Id.* (emphasis in original). In an August 3, 2011 meeting, the respondent stated to an Associate CALJ that he did not "see a need to corroborate" a "lucid" claimant's statement that s/he wants a CPOD, and he was advised that there still needed to be a second RFC assessment. IAF, Tab 105 at 48.

¶13        Most significantly, in a December 5, 2011 directive, the respondent's first‑line supervisor noted that the respondent's decisions "contain analytical deficiencies including a lack of analysis to support a non-disability RFC and a lack of analysis to support a finding of medical improvement beyond the claimant's agreement to a closed period. . . ." IAF, Tab 93 at 21-22. The respondent was explicitly directed to determine whether there had been medical improvement by comparing prior and current medical evidence and by illustrating any improvement in the signs, symptoms, or laboratory findings. *Id.* at 22. The respondent's first-line supervisor subsequently advised him that he should "pick and cho[o]se some items from the record, aside from the claimant's statement" to document medical improvement. IAF, Tab 108 at 5; *see* HT 1 at 241‑42, HT 2 at 60 (testimony of the first-line supervisor). Because the respondent was on notice that, during the relevant time period, SSA policy required more than a claimant's statement alone to support a finding of medical improvement, and the respondent did not comply with SSA policy, we agree with the ALJ that SSA proved these specifications.

¶14        We have considered the respondent's reliance on the U.S. Court of Appeals for the Tenth Circuit's decision in *Newbold v. Colvin*, 718 F.3d 1257, 1263-64 (10th Cir. 2013), which stated that a finding of medical improvement may be based on symptoms alone. PFR File, Tab 15 at 10-13. The respondent's citation to *Newbold* does not warrant a different outcome because the court's decision is not binding on the Board or SSA. Importantly, as pertaining to the merits of the charge, decisions of the U.S. Court of Appeals for the Federal Circuit are controlling authority for the Board, whereas other circuit courts' decisions are

persuasive, but not controlling, authority. *Fairall v. Veterans Administration*, 33 M.S.P.R. 33, 39, *aff'd*, 844 F.2d 775 (Fed. Cir. 1987). Additionally, the ALJ made findings of fact that SSA ALJs have a duty to comply with the Social Security Act, regulations, rulings, agency policies, HALLEX, and Acquiescence Rulings.[5] ID at 10-11. There is no evidence that SSA issued an Acquiescence Ruling after *Newbold*, and thus, SSA and its ALJs did not have to follow the court's decision.

¶15    Finally, we have considered the respondent's contention that Program Operations Manual System provision 28010.015(A)(2) controls this issue because it advises adjudicators that improvement in symptoms alone, without associated changes in signs or laboratory findings, "may support" a medical improvement determination. PFR File, Tab 1 at 15-17. This argument is unavailing. Notably, the ALJ relied on the testimony of various SSA officials and found that the Operations Manual is not a prime source of policy at the Office of Disability Adjudication Review (ODAR) because it sets forth internal policies for proceedings at the district office level, not for hearing operations. ID at 10-11. The respondent's reference to *Draper v. Colvin*, 779 F.3d 556 (8th Cir. 2015)— which affirmed a district court decision that deferred to an Operations Manual provision regarding liens, adjustments and recoveries, and transfers of assets— does not warrant a different outcome because SSA did not issue an Acquiescence Ruling as to that matter. PFR File, Tab 1 at 16-17.

¶16    In his reply brief, the respondent contends that he complied with the position description that was in place until December 2013, which authorized him to "take[] into account all applicable Federal, State, and foreign law[s], statutes,

---

[5] An Acquiescence Ruling is issued when a circuit court has issued a decision contrary to SSA policy but SSA agrees to acquiesce to the circuit law. HT 1 at 202 (testimony of the first-line supervisor); HT 3 at 78 (testimony of the second-line supervisor); HT 4 at 225-29 (testimony of the CALJ); HT 5 at 65-66 (testimony of the Associate CALJ); IAF, Tab 93 at 12-13; 20 C.F.R. § 404.985.

regulations, rulings, *and decisions of the Federal court.*[6] PFR File, Tab 21 at 14–15 (emphasis in original); IAF, Tab 93 at 62-67. The respondent argues that, until this date, he could "expressly . . . take Federal court decisions from whatever jurisdiction into account, and after that date[,] [he] was not prohibited from doing so as long as the Federal Court decision did not conflict with [SSA] policy." PFR File, Tab 21 at 15. This argument is unavailing. Indeed, in the absence of any evidence that SSA issued an Acquiescence Ruling regarding *Newbold*, *Draper*, or any circuit court decision that was inconsistent with SSA policy, such decisions could not constitute "applicable" decisions, as described in the earlier position description.

¶17 In specifications 3 and 4, SSA alleged that the respondent had a duty to "make a complete record of hearings proceedings," and he breached this duty in fiscal years 2013 and 2014. IAF, Tab 1 at 11. In the initial decision, the ALJ relied on the relevant regulations, HALLEX I-2-6-40, a June 2011 retraining, an August 3, 2011 meeting with the respondent, a September 1, 2011 memorandum to all ALJs from the CALJ, a December 5, 2011 directive, and testimony regarding hearing records from five of the respondent's cases; the ALJ concluded that SSA proved that the respondent had a duty to make a complete record, which included a summary of the content and conclusion of any off-the-record discussions, and the respondent failed to do so. ID at 14-15, 78-83; IAF, Tab 93 at 7, 21-23, Tab 94 at 10-11. On review, the respondent challenges, among other things, the ALJ's reliance on testimony regarding a "focused review" of only five of his hundreds of cases and the December 5, 2011 directive. PFR File, Tab 1 at 18-19. He further asserts that neither the ALJ nor SSA adequately defined the requirement that he "adequately summarize" any off-the-record discussions, and thus, SSA's action violates his due process rights. *Id.* We disagree. Rather,

---

[6] The revised position description did not include such language. IAF, Tab 1 at 15-21; HT 4 at 213 (testimony of the CALJ); ID at 9 n.6.

consistent with HALLEX I-2-6-40,[7] the December 5, 2011 directive instructed the respondent to "summarize on the record, all off-the-record discussions concerning amending claims involving CPODs, as well as any other discussions relevant to the issues in a claimant's case." IAF, Tab 93 at 23. The respondent, who has advanced degrees and was an ALJ for nearly 10 years, ID at 7; HT 6 at 202 (testimony of the respondent), should have no difficulty understanding SSA's requirement that he summarize such off-the-record discussions. Moreover, we are not persuaded that SSA's review of a small portion of the respondent's cases warrants a different outcome. We therefore discern no error with the ALJ's conclusion that SSA proved specifications 3-4.

¶18        In specifications 5 and 6 of the neglect of duties charge, SSA alleged that the respondent had a duty to safeguard personally identifiable information (PII), and he breached this duty in fiscal years 2013 and 2014. IAF, Tab 1 at 11. On review, the respondent contends that, either in late 2014 or early 2015, his first−line supervisor directed him to stop sending PII to unsecured partners, and he complied with that request. PFR File, Tab 1 at 20; HT 6 at 261-62 (testimony of the respondent). As support for his contention that he should not be disciplined for this misconduct, the respondent discusses *Adamek v. U.S. Postal Service*, 13 M.S.P.R. 224, 226 (1982), in which the Board barred an agency from taking an adverse action against an employee when it already had imposed a disciplinary action because of the employee's misconduct. PFR File, Tab 1 at 21. The respondent recognizes that his first-line supervisor's counseling regarding PII did not constitute a disciplinary or an adverse action, but he argues that the Board's reasoning in *Adamek* should be extended to cases in which the underlying behavior "has been previously and amicably *addressed*, *discussed*, and *resolved*"

---

[7] HALLEX I-2-6-40 states, "If a question arises during the course of a hearing that is not relevant to the issues in the claimant's case, the ALJ may decide to discuss and resolve it off-the-record. However, the ALJ must summarize on the record the content and conclusion of any off-the-record discussion." IAF, Tab 94 at 10-11.

between the agency and employee, and the behavior was not repeated. *Id.* (emphasis in original). We are not persuaded that it is appropriate to extend *Adamek*'s reasoning to a case such as this when there was no prior adverse action. *See, e.g.*, *Tawadrous v. Department of the Treasury*, 477 F. App'x 735, 738 (Fed. Cir. 2012) (declining to extend *Adamek* to a situation when the agency rescinded the June 2010 removal before there was a judgment on the merits and provided the appellant with back pay and finding that the prior rescinded action "presents no obstacle to Treasury's November 2010 effort to remove [him] on the same charges").[8] Because the respondent does not dispute that he failed to safeguard PII as described during the timeframe identified in the complaint, we affirm the ALJ's decision to sustain specifications 5-6 of the neglect of duties charge. ID at 100-02.

¶19 In specifications 7 and 8 of the neglect of duties charge, SSA alleged that the respondent had a "duty to act in a fair and impartial manner" and that he breached this duty in fiscal years 2013 and 2014. IAF, Tab 1 at 11. SSA relied on several emails between the respondent and various claimants' representatives to support these specifications. IAF, Tab 111 at 29, 68-69. In the initial decision, the ALJ found that the respondent had a duty to act in a fair and impartial manner and that the respondent knew of this duty, but SSA did not prove that he failed to act in a fair and impartial manner because, among other things, the CALJ could not point to any cases in which a claimant received a more favorable outcome based on the identity of the claimant's representative. ID at 16, 94. In its cross petition for review, SSA argues, among other things, that the ALJ took "an unreasonably circumscribed view" of the respondent's duty of impartiality, arguing that this duty extended beyond his interaction with claimants and beyond his conduct during hearings. PFR File, Tab 5 at 23-26. We need not

---

[8] The Board may follow a nonprecedential decision of the Federal Circuit when, as here, it finds its reasoning persuasive. *LeMaster v. Department of Veterans Affairs*, 123 M.S.P.R. 453, ¶ 11 n.5 (2016).

resolve this issue on review because, even if we affirmed the ALJ's decision not to sustain these specifications, we would still sustain the neglect of duties charge based on our decision to affirm the ALJ's finding that SSA has proven specifications 1-6 by preponderant evidence. *See Burroughs v. Department of the Army*, [918 F.2d 170](#), 172 (Fed. Cir. 1990) (finding that when more than one event or factual specification supports a single charge proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

SSA proved the conduct unbecoming charge.[9]

¶20    In the complaint, SSA alleged that the respondent engaged in various "improper communication[s]" with several claimants' representatives, which constituted conduct unbecoming. IAF, Tab 1 at 11-12. The ALJ sustained specifications 1, 3-12, and 14 of the conduct unbecoming charge and the charge itself. ID at 95-115. Both the respondent and SSA challenge the ALJ's findings regarding the specifications.

¶21    Regarding specifications 1, 3-12, and 14, the respondent contends that the ALJ erred by imposing discipline for his "collegial" and "flattering" language in correspondence with counsel. PFR File, Tab 1 at 22. He asserts that SSA is not represented at hearings and, because the only parties appearing before him are the claimant and his/her representative, collegial ALJ-counsel relations are an "essential lubricant" that allows the judicial gears to turn efficiently. *Id.* at 23. He also asserts that the ALJ applied a "broad and standardless" rule; the ALJ overlooked the "cardinal principle" that one who alleges bias must overcome a presumption of honesty and integrity; and a reasonable person with knowledge of the relevant facts would not find that the communications create an appearance that the law or these standards have been violated. *Id.* at 22-26. These arguments are unavailing.

---

[9] SSA does not challenge the ALJ's conclusion that it did not prove specification 16 of the conduct unbecoming charge. ID at 110-11; PFR File, Tab 5 at 22 n.11. We therefore affirm the ALJ's finding in this regard.

¶22    The Board has described conduct unbecoming an ALJ as "conduct which was improper, unsuitable, or detracting from one's character or reputation." *Long*, 113 M.S.P.R. 190, ¶ 42.  The Board also has held that an agency has proven a charge of conduct unbecoming if it proves that the employee violated one of the 14 general principles contained in 5 C.F.R. § 2635.101(b).  *Schifano v. Department of Veterans Affairs*, 70 M.S.P.R. 275, 281 (1996).  The ALJ relied on the regulation at 5 C.F.R. § 2635.101(b)(8), (b)(14) in his analysis of these specifications.[10]  ID at 95-97.  We discern no error with the analytical framework used by the ALJ.

¶23    We also affirm the ALJ's finding that SSA proved that the communications described in specifications 1, 3-12, and 14 constituted conduct unbecoming because they give the appearance of a lack of impartiality.  For example, in specification 1, the respondent, in agreeing to a CPOD, told the claimant's representative that "the fact that it's you as [the claimant's] attorney doesn't hurt matters," and that the claimant's representative was "one of the best attorneys it has been [his] privilege to know."  IAF, Tab 1 at 11, 40.  He also said that she "practice[d] law the way [he] used to, realistically, energetically, and efficiently," commenting "What's not to like about you?"  *Id.* at 40.  In specification 3, the respondent told the claimant's representative, "I just wanted to make sure your ___ was covered[.]  I protect my lawyers (at least those, like you, whom I like)."  *Id.* at 42.  In specification 4, the respondent told the claimant's representative that the respondent's "discretion has a floor and a ceiling, and [the representative] always get[s] the ceiling, but to resolve this case without a

---

[10] The regulation at 5 C.F.R. § 2635.101(b)(8) states that employees "shall act impartially and not give preferential treatment to any private organization or individual."  Subsection 2635.101(b)(14) states that employees "shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part."  Subsection 2635.101(b)(14) further advises that "[w]hether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts."

hearing would require [the respondent] to ascend to the stratosphere!" *Id.* at 43. In a follow-up email, the respondent also stated that he was "flattered" to consider himself one of the claimant's representative's "friends." *Id.* On their face, the emails described in specifications 1, 3-4 give the appearance of a lack of impartiality. We affirm the ALJ's decision to sustain these specifications.

¶24        The respondent further asserts that specifications 5-10, involving email correspondence with the same claimant's representative, do not warrant the conclusion that these communications created an appearance of impropriety. PFR File, Tab 1 at 24. We are not persuaded by these arguments. Rather, we find that a reasonable person would conclude that each of these communications was improper and/or created an appearance of preferential treatment. For example, in the email described in specification 5, the respondent made improper comments about claimants' cases. IAF, Tab 1 at 12, 46-47. In the email described in specification 6, the respondent states, "Just to show you the amount of good will you've banked, I set aside a decision I was writing to attend to your email." *Id.* at 12, 47. In the email described in specification 7, the respondent states, "It's always a treat to have a lawyer of your ability and dedication to work with." *Id.* at 12, 49. In the email described in specification 8, the respondent discussed an arbitration hearing that he (the respondent) was involved in, referred to an Associate CALJ as the "Chicago hit man," and called him an "anti-judge bureaucrat." *Id.* at 12, 52. The respondent also stated in this email that he would treat attorneys like the recipient differently than other attorneys. *Id.* at 53 ("When I have attorneys like you to deal with, I will be the same open, inquiring person I have always been, and encourage free-wheeling debate and discussion like we've always had. Where I have attorneys I don't know before me, I'll ask no questions other than that of the [vocational expert] . . . ."). In specification 9, the respondent made an inappropriate remark about a juvenile claimant to the claimant's representative and invited the representative to contact him over the weekend on his personal email account. *Id.* at 12, 54, 56. In specification 10, the

respondent explicitly acknowledged that his disposition would result in the claimant's representative receiving a fee for his work in that matter, and he noted the "effort" that the representative put into the case. *Id.* at 12, 63. We discern no error with the ALJ's analysis of specifications 5-10 or his conclusion that each of these emails gave the appearance of a lack of impartiality and constituted conduct unbecoming. ID at 100-05.

¶25      In the email described in specification 11, the respondent told the claimant's representative, "if you are telling me as an officer of the court and my friend that the claimant did indeed undergo a fusion in October 2013," then he would decide the case based on her representation. IAF, Tab 1 at 12, 65. In the email described in specification 12, the respondent told the claimant's representative that she was "one of a group (fairly small group) of attorneys who may always contact [him], bidden or unbidden" and that he "respect[ed] [her] immensely, and value[d] [her] input consistently." *Id.* at 12, 68. We agree that both of these emails are evidence of conduct unbecoming, and we affirm the ALJ's analysis of these specifications. ID at 105-07.

¶26      In the email described in specification 14, the respondent used his personal email address and told the claimant's representative, among other things, that the representative reminded him of himself and that he (the respondent) was "never fortunate enough to have the opportunity to appear before a Judge with whom [he] could have these types of 'out of court' dialogues" regarding a particular matter. IAF, Tab 1 at 12, 74-79. We agree with the ALJ that this communication constituted conduct unbecoming. ID at 108-09.

¶27      On review, the respondent contends that the ALJ erred because one who alleges bias must overcome a presumption of honesty and integrity. PFR File, Tab 1 at 24-25. Although this is an accurate proposition of law, *see, e.g.*, *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980), SSA did not allege in the conduct unbecoming specifications—and the ALJ did not find—that the respondent *was* biased in favor of or against the claimants whose

representatives were communicating with the respondent. Moreover, the respondent even acknowledged that the communications described in the conduct unbecoming specifications are "capable of being interpreted *nefariously*." PFR File, Tab 1 at 26 (emphasis in original). For these reasons, we agree with the ALJ's decision to sustain specifications 1, 3-12, and 14.

¶28 Turning to SSA's cross petition for review, we agree with SSA that the ALJ should have sustained specification 15 of the conduct unbecoming charge. PFR File, Tab 5 at 28-29. In this specification, SSA alleged that the respondent forwarded an email to a claimant's representative with the subject line "[the CALJ] just violated federal law and thumbed nose at U[.]S[.] Supreme Court." IAF, Tab 1 at 12, 80-82. The forwarded email, from a colleague of the respondent, called the CALJ a "complete idiot" and included a bulletin which allegedly "orders SSA ALJs to violate federal law." *Id.* at 80-82. In the initial decision, the ALJ found unpersuasive SSA's argument that the respondent's decision to forward the email to a claimant's representative would undermine public confidence in SSA; however, he did not provide any explanation for his decision or cite to any legal authority or the CALJ's testimony regarding the effect of the respondent's distribution of this email. ID at 109-10; PFR File, Tab 5 at 28-29. We disagree with the ALJ's assessment of this email. Rather, the respondent's decision to forward to a claimant's representative an internal SSA email with commentary that was critical of the CALJ and discussed "inside baseball" topics creates an appearance of a lack of impartiality and constitutes conduct unbecoming. HT 5 at 279-80 (testimony of the CALJ). We modify the initial decision in this regard.

¶29 We have considered SSA's arguments regarding specification 13 of the conduct unbecoming charge wherein SSA charged that the respondent expressed concern for a favored attorney's receiving a fee in a case she was handling before him and suggested how she might go about securing that fee. PFR File, Tab 5 at 27-28; IAF, Tab 1 at 12, 70-73. We have also considered SSA's argument

regarding specification 2 wherein the agency charged that the respondent's decision to use a claimant's full name and another claimant's last name in an August 31, 2012 email to a claimant's representative constituted improper transmission of PII and, therefore, conduct unbecoming. PFR File, Tab 5 at 26‒27. However, we need not resolve either of these issues because we find that SSA proved the conduct unbecoming charge based on our decision to affirm the ALJ's decision to sustain specifications 1, 3-12, and 14, and our separate decision to sustain specification 15. *See Burroughs*, 918 F.2d at 172.

We modify the initial decision to find that the respondent's November 15, 2012 letter to OIG constituted protected activity, but he did not prove that the protected activity was a contributing factor in SSA's decision to file a complaint against him.

¶30     As noted above, in the initial decision, the ALJ determined that the respondent did not prove that he made any whistleblowing disclosures.[11] ID at 115-29. In particular, the ALJ found that the respondent's November 15, 2012 letter to OIG[12] did not constitute a protected disclosure because, among other things, his allegations of "mismanagement" did not rise to the level of "gross mismanagement" under 5 U.S.C. § 2302(b)(8).[13]     ID at 121-23; IAF,

---

[11] Neither party challenges the ALJ's analysis of the respondent's claim of reprisal for whistleblowing as an affirmative defense or his finding that the respondent did not make any whistleblowing disclosures. ID at 115-29. Except as modified to discuss the respondent's November 15, 2012 correspondence to OIG, we affirm the initial decision in this regard.

[12] In this letter, the respondent reported two instances of "serious mismanagement." IAF, Tab 95 at 39-40. He described how counsel for a disability claimant in one case filed a motion to recuse and how counsel for a disability claimant in another case complained about him to ODAR management. *Id.* at 40. He further described how SSA sought to take disciplinary action against him during an October 25, 2012 interview, but his first-line supervisor, who was present during the meeting, failed to listen to the complete version of the hearings in those matters. *Id.*

[13] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. Section 1097 of the NDAA amended various provisions of title 5

Tab 95 at 39–40. Although not explicitly raised by the respondent on review, we modify the initial decision to address this finding.

¶31     Under the law in effect at the time SSA filed this complaint in October 2015,[14] an employee may establish a prima facie case of retaliation for whistleblowing disclosures and/or protected activity by proving by preponderant evidence[15] that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the whistleblowing disclosure or protected activity was a contributing factor in the agency's decision to take a personnel action against him. 5 U.S.C. § 1221(e)(1); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 12 (2015); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015). If the employee makes both of these showings by preponderant evidence, the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the protected activity. *Alarid*, 122 M.S.P.R. 600, ¶ 14.

¶32     It appears that the ALJ analyzed this claim under 5 U.S.C. § 2302(b)(8)(B)(ii), which states that it is a prohibited personnel practice (PPP) to take a personnel action against an employee because of "any disclosure . . . to the Inspector General . . . of information which the employee . . . reasonably believes evidences . . . gross mismanagement." The ALJ's reliance on this statutory provision was in error. We need not remand the appeal, though, because the

of the U.S. Code. Our disposition of this matter would be the same under both pre‑ and post-NDAA law.

[14] Although the respondent's correspondence to OIG predated the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, § 202, 126 Stat. 1465, the Board may consider the provisions of the WPEA because SSA's complaint was filed after that date, *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 2 n.1 (2014).

[15] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

record is fully developed on this issue. Instead, we conclude that the respondent's claim is more appropriately analyzed under 5 U.S.C. § 2302(b)(9)(C), which states that it is a PPP to take an action against an employee because that employee "disclos[ed] information to the Inspector General . . . of an agency . . . in accordance with applicable provisions of law." The respondent's November 15, 2012 letter satisfies the criteria under section 2302(b)(9)(C) and constitutes protected activity. *See, e.g.*, *Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 612 (1991) (finding that section 2302(b)(9)(C) covers employee disclosures to OIG that do not meet the precise terms of the actions described in section 2302(b)(8)), *recons. denied*, 52 M.S.P.R. 375, *aff'd*, 981 F.2d 1237 (Fed. Cir. 1992).

¶33        We must next determine whether the respondent's November 15, 2012 letter to OIG was a contributing factor in SSA's decision to file the complaint against him. One way of proving that the respondent's protected activity was a contributing factor in the personnel action is the "knowledge/timing test." *Alarid*, 122 M.S.P.R. 600, ¶ 13 (citing *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 22 (2013)). The knowledge/timing test allows an employee to demonstrate that the protected activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the protected activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the personnel action. *Alarid*, 122 M.S.P.R. 600, ¶ 13; *see* 5 U.S.C. § 1221(e)(1). The ALJ found—and the respondent does not contest—that the CALJ who signed the complaint was not aware of the respondent's November 15, 2012 letter to OIG when she authorized the filing of the complaint in this matter. ID at 53. Thus, the knowledge component of the knowledge/timing test is not satisfied.

¶34        There are, however, other ways to satisfy contributing factor, such as evidence pertaining to the strength or weakness of the agency's reasons for taking

the action, whether the protected activity was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the respondent. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012); *Powers v. Department of the Navy*, 69 M.S.P.R. 150, 156 (1995). As noted above, there is strong evidence to support SSA's charges. The November 15, 2012 letter identified the respondent's first-line supervisor by name and criticized ODAR's region one management, IAF, Tab 95 at 39-40, but there is no evidence that the respondent's first-line supervisor, or anyone in ODAR region one management, had any knowledge of the respondent's November 15, 2012 letter to OIG prior to the complaint being filed or that any of these individuals had a desire or motive to retaliate against the respondent. *E.g.*, HT 1 at 281 (testimony of the respondent's first-line supervisor); HT 2 at 277 (testimony of the respondent's second-line supervisor). Finally, we have considered whether the CALJ had constructive knowledge of the respondent's OIG letter, *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 15 (2016), but we are not aware of any evidence in this regard.

¶35      Because we have found that the respondent failed to prove that his protected activity was a contributing factor in SSA's decision to file the complaint seeking to remove him, it is unnecessary to determine whether SSA proved by clear and convincing evidence that it would have filed the complaint in the absence of the respondent's protected activity. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015).

We find that there is good cause to remove the respondent.

¶36      The ALJ correctly noted that, in evaluating the penalty in an original jurisdiction case under 5 U.S.C. § 7521, the Board looks to the factors articulated in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). ID at 130; *Long*, 113 M.S.P.R. 190, ¶ 47. In the initial decision, the ALJ evaluated the *Douglas* factors, finding, among other things, that the sustained misconduct was "serious, and . . . repeated notwithstanding clear notice and guidance" from

SSA, and the misconduct merited a "substantial" penalty. ID at 130-43. However, the ALJ concluded that a 180-day suspension was a reasonable penalty. ID at 143-44. On cross petition for review, SSA asserts that the ALJ improperly considered the following penalty factors as mitigating factors: (1) the respondent's past work record; (2) the consistency of the penalty; (3) the notoriety of the offense; (4) the respondent's potential for rehabilitation; and (5) the availability of alternative sanctions. PFR File, Tab 5 at 11-22; ID at 143−44.

¶37 We disagree with SSA's arguments regarding the ALJ's evaluation of the respondent's past work record. SSA challenges the ALJ's finding that the respondent's productivity and intelligence were mitigating factors, and it asserts that the ALJ ignored the fact that SSA referred the respondent to the OIG for investigation in 2013. PFR File, Tab 5 at 12-15; ID at 133-39, 141. In the initial decision, the ALJ cited the testimony of others regarding the respondent's productivity and intelligence and found that the respondent had a positive work ethic and was viewed as intelligent and fair by representatives who appeared before him. ID at 141-43. SSA argues that the respondent's high productivity is illusory given his failure to abide by agency policy, PFR File, Tab 5 at 12-13, but this fact, even if true, does not warrant a different outcome. The ALJ also noted, among other things, that SSA received numerous complaints against the respondent, and his supervisor estimated that 80% of his workload in dealing with complaints against ALJs involved complaints submitted against the respondent. ID at 141. It therefore appears that the ALJ identified the relevant evidence regarding this factor. Even if the ALJ did not discuss the OIG referral in his analysis of the particular penalty factor, he discussed it in his findings of fact. ID at 26-27. Additionally, the ALJ's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985).

¶38    However, we agree with SSA's argument that the ALJ did not properly evaluate the notoriety of the respondent's offense.  PFR File, Tab 5 at 12-15.  The ALJ acknowledged that a district court decision in *Betancourt v. Astrue*, 824 F.Supp.2d 211 (D. Mass. 2011), discussed the respondent's failure to memorialize off-the-record conversations, ID at 142, but the ALJ was not persuaded by SSA's speculation that claimants and their representatives were aware of the respondent's misconduct, and he concluded that the evidence did not show that the misconduct was notorious or adversely impacted SSA's reputation.  *Id.*  Yet, as the ALJ noted just paragraphs earlier in his decision, that very same handling of off-the-record conversations admonished in *Betancourt* had been the subject of numerous complaints since at least 2010, resulting in the aforementioned testimony from the first-line supervisor that 80% of his workload in dealing with complaints against ALJs involved complaints submitted against the respondent.  ID at 140-41.  We therefore agree with SSA that, as an ALJ, the respondent held a prominent, visible, and public position that is subject to scrutiny, perhaps more so than many other types of agency officials who do not routinely interact with the public, and that his misconduct, even if not technically notorious, did reflect negatively on SSA's reputation.

¶39    We also are persuaded that the ALJ erred in his analysis of the consistency of the penalty, the respondent's potential for rehabilitation, and the availability of alternative sanctions.  For instance, regarding the consistency of the penalty with those imposed upon other employees for the same or similar offenses, we agree with SSA that the ALJ took a narrow view of this factor by failing to mention any of the misconduct relating to the conduct unbecoming charge.  PFR File, Tab 5 at 16; ID at 142.  Importantly, the CALJ testified that she sought removal of another ALJ for only "neglect of duty for failure to follow Agency policy," the appeal of which was then pending, and she stated that the respondent's misconduct was "very, very rare."   HT 5 at 291-92 (testimony of the CALJ).

Given the unusual nature of the sustained misconduct, we find that the absence of comparator evidence is not a mitigating factor.

¶40    Regarding the respondent's potential for rehabilitation, the ALJ considered the fact that the respondent improved his practices regarding PII and also began memorializing "more" of the content of his off-the-record conversations and communications. ID at 139, 143. Although the degree to which the respondent may have improved his efforts to memorialize his off-the-record conversations is unclear, PFR File, Tab 5 at 19, the ALJ properly considered such evidence in his assessment of the respondent's potential for rehabilitation. However, the ALJ also cited to the respondent's brief that he was "'able and willing' to adjust his behavior" to support the conclusion that he had a potential for rehabilitation. ID at 139 (citing IAF, Tab 112 at 73). Statements of a party's representative in a pleading do not constitute evidence, *Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995), and it was error for the ALJ to rely on the representative's statements in this regard.[16] We find that there is not a strong potential for rehabilitation here, particularly given the respondent's failure to comply with SSA policy regarding CPOD decisions and his numerous improper communications with claimants' representatives that gave the appearance of a lack of impartiality. Indeed, as the ALJ found, the respondent "persistently challenged and resisted [SSA] direction, maintaining that [SSA's] policies were incorrect and that [his] practices were justified." ID at 133. Moreover, regarding his communications with claimants' representatives, there is no evidence whatsoever that he improved his communications or judgment in this regard; thus, we find that there is little potential for rehabilitation.

¶41    Finally, regarding the adequacy and effectiveness of alternative sanctions, the ALJ noted that the respondent previously had not been sanctioned in connection with the sustained misconduct, and he concluded that the record

---

[16] Although the respondent is pro se on review, PFR File, Tab 7, he was represented during the proceedings below, IAF, Tabs 5, 112.

did not show that removal, rather than a lesser sanction, would be more effective to deter the respondent or others from engaging in similar conduct.  ID at 143.  In its cross petition for review, SSA argues, in pertinent part, that the lack of prior discipline does not make removal inappropriate in this case.  PFR File, Tab 5 at 20 (noting that, in cases such as *Long*, 113 M.S.P.R. 190, and *Social Security Administration v. Steverson*, 111 M.S.P.R. 649 (2009), the Board has found good cause to remove an ALJ even in the absence of prior discipline).  Here, the respondent received the December 5, 2011 directive, which advised him that failure to follow the directive may lead to disciplinary action.  IAF, Tab 93 at 23.  Moreover, the ALJ made the following findings:  (1) SSA referred the respondent to OIG in October 2013; (2) OIG conducted an investigation; (3) it was ODAR's practice to hold in abeyance any administrative actions against an employee once an OIG referral has been made; and (4) prior to the OIG referral SSA had been working on potential discipline for the respondent.  ID at 26-27.  Thus, the fact that SSA took no action against the respondent from the time of its October 2013 referral to OIG until after it received the OIG reports in December 2014 and February 2015, ID at 27, does not, under these circumstances, make this factor mitigating.

¶42     We agree with the ALJ's analysis of the nature and seriousness of the misconduct, which is the most significant *Douglas* factor, and his conclusion that the respondent's misconduct was "serious," "repeated," "directly pertain[ed] to [his] responsibilities as an ALJ," "negatively impact[ed] the legal sufficiency and defensibility of his [CPOD] decisions," "directly affect[ed] [the respondent's] obligation to provide claimants with a full, due process hearing," and "reflected poorly on the ALJ position."   ID at 131-32, 143; *Murry v. General Services Administration*, 93 M.S.P.R. 554, ¶ 8 (2003), *aff'd*, 97 F. App'x 319 (Fed. Cir. 2004).  We also agree with the ALJ that the sustained misconduct warrants a "substantial" penalty.  ID at 143.  Although a 180-day suspension is a significant penalty, *Colon v. Department of the Navy*, 58 M.S.P.R. 190, 204 (1993), we find

that, given the serious and repeated nature of the misconduct, the *Douglas* factors discussed herein, and the ALJ's assessment of the remaining factors, SSA has proven good cause to remove the respondent. *See, e.g.*, *Steverson*, 111 M.S.P.R. 649, ¶¶ 2-3, 6-12, 19-21 (finding good cause to remove the respondent ALJ based on charges of conduct unbecoming, lack of candor, misuse of Government equipment, and failure to follow agency policy).

We deny SSA's request to suspend the respondent from the date the complaint was filed through the Board's final decision.

¶43    SSA argued in its complaint that the respondent's neglect of duties and conduct unbecoming "fundamentally undermines public confidence" in the agency's adjudicatory process, and, therefore, good cause exists to suspend him from the date of the October 2, 2015 complaint through the Board's final decision in this matter. IAF, Tab 1 at 5, 12-13. In the initial decision, the ALJ noted that SSA cited no authority to support its request for a retroactive suspension, and he rejected SSA's request in this regard. ID at 144. In its cross petition for review, SSA challenges the ALJ's conclusion, emphasizing that, because Congress has not defined the term "suspension" in 5 U.S.C. § 7521, the Board can give it meaning. PFR File, Tab 5 at 29-32.

¶44    Other than citing to section 7521, SSA provides no legal basis for its request; rather, SSA only appears to focus on policy arguments. *Id.* We are not persuaded by SSA's arguments. Importantly, section 7521(a) advises that an agency may not take an action against an ALJ until the Board "establish[es] and determine[s]" that the agency has made a showing of good cause. 5 U.S.C. § 7521(a); *see, e.g.*, *Social Security Administration v. Boham*, 38 M.S.P.R. 540, 546-47 (1988) (finding that SSA proved good cause to discipline the respondent ALJ based on his refusal to comply with reasonable orders concerning case scheduling and authorizing SSA to suspend him for a period up to 75 days), *aff'd*, 883 F.2d 1026 (Fed. Cir. 1989) (Table). SSA is essentially asking the Board to approve a time‑served suspension. However, the Board has held that the

imposition of a time‑served suspension is arbitrary. *Milligan v. U.S. Postal Service*, 106 M.S.P.R. 414, ¶ 13 (2007); *see Greenstreet v. Social Security Administration*, 543 F.3d 705, 709 (Fed. Cir. 2008) ("[T]he length of a suspension is arbitrary when it is based solely on the suspended employee's 'time served' awaiting decision."). We are not persuaded that it is appropriate to interpret the statute at 5 U.S.C. § 7521 as authorizing a time-served or retroactive suspension, and we deny SSA's request.

## ORDER

¶45 We have considered the parties' remaining arguments, but we find them unpersuasive. The Board authorizes the petitioner to remove the respondent for good cause shown, pursuant to 5 U.S.C. § 7521.

## NOTICE OF APPEAL RIGHTS[17]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[17] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[18]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[18]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.